# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**JEFFERSON-11TH STREET, LLC**
1433 T Street, N.W., Suite T-10
Washington, D.C.  20009,

                    Plaintiff,

    - against -

**THE DISTRICT OF COLUMBIA**

Serve:
Hon. Muriel Bowser (or designee)
Executive Office of the Mayor
John A. Wilson Building
1350 Pennsylvania Avenue, N.W.
Washington, DC  20004

Karl A. Racine, Esq. (or designee)
Attorney General for the District of Columbia
441 4th Street, N.W, Suite 1100 South
Washington, D.C.  20001,

**2724 11TH STREET NW TENANTS'**
**ASSOCIATION, INC.**
2724 11th Street, N.W.
Washington, D.C.  20001,

**LATINO ECONOMIC DEVELOPMENT**
**CORPORATION OF WASHINGTON, D.C.**
641 S Street, N.W.
Washington D.C.  20001,

**BENJAMIN GILMORE**, as Receiver of 2724
11th Street, N.W.
c/o The Gilmore Law Firm, PLLC
1702 Seaton Street, N.W.
Washington, D.C.  20009, and

**JOHN DOES 1-5**,
Addresses unknown,

                    Defendants.

Civil Case No.

## COMPLAINT

Plaintiff Jefferson-11th Street, LLC, by counsel, for its complaint against defendants alleges:

## PARTIES

1.     Plaintiff Jefferson-11th Street, LLC, is a District of Columbia limited liability company and has its principal place of business in the District of Columbia.

2.     Defendant the District of Columbia ("**District**") is a body corporate for municipal purposes.  The District exercises executive power through, among other authorities, the Office of the Attorney General ("**OAG**") and the Board of Zoning Adjustment ("**BZA**").  The District exercises judicial power, at the trial level, through the Superior Court of the District of Columbia and its judges ("**DC Superior Court**") and through Benjamin Gilmore, acting as court-appointed receiver, as alleged further below.  The District exercises legislative power, in part, through the operation of Advisory Neighborhood Commissions ("**ANC**").

3.     On information and belief, defendant 2724 11th Street NW Tenants' Association, Inc. ("**Tenants' Association**"), is a District corporation, has its principal place of business in the District, and exists, in part, to cause the Property (as defined further below) to be sold to a landlord chosen by tenants of the Property.

4.     On information and belief, defendant Latino Economic Development Corporation of Washington, D.C. ("**LEDC**"), is a District corporation doing business as the "Latino Economic Development Center" and has a place of business in the District.  On information and belief, LEDC exists, in part, to assist tenants in purchasing their apartment buildings, including

the Property (as defined further below), for themselves under the Tenant Opportunity to Purchase

Act, D.C. Code §§ 42-3404.01 to-.14 ("**TOPA**").

5.      Defendant Benjamin Gilmore is a natural person and, on information and belief,

has a place of business in the District of Columbia.  As of November 17, 2017, defendant

Gilmore has served as court-appointed receiver, as alleged further below.

6.      Defendants John Doe 1-5 are persons or entities presently unknown to plaintiff, as

alleged further below, but whose identities and roles are anticipated to be revealed in pre-trial

discovery.

## JURISDICTION & VENUE

7.      This court has jurisdiction of the subject matter of Counts I and II of this action

pursuant to 28 U.S.C. § 1331 as an action arising under the Constitution of the United States and

pursuant to 28 U.S.C. § 1343(a)(3) as an action to redress the deprivation under color of District

law, ordinance, custom, and usage of rights secured by the Constitution of the United States.

8.      The court has supplemental jurisdiction of the subject matter of Count III pursuant

to 28 U.S.C. § 1367(a).

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2)

because, on information and belief, all defendants reside in this district, a substantial part of the

events giving rise to the claims occurred in this district, and the Property (as defined further

below) that is the subject of the action is situated in this district.

## ALLEGATIONS COMMON TO ALL COUNTS

**The Property**

10.      Since 2009, plaintiff Jefferson-11th Street, LLC has owned 2724 11th Street,

N.W., Washington, D.C., a two-story (plus basement), nearly 100-year-old, 26-unit residential

apartment building ("**Property**").

11.     The Property is unencumbered with debt; and Jefferson-11th Street, LLC's equity in the Property is therefore 100% of the Property's fair market value.

12.     The Property is zoned R-4.

13.     The Property is located in ANC area 1B.

14.     As of January 1, 2018, the District's Department of Taxation and Revenue assessed the market value of the Property to be $2,778,490.

15.     Since 2017, only fifteen of the Property's twenty-six rental units have been occupied.

16.     The Property is subject to the District's laws and regulations establishing a scheme of limitations on the escalation of certain residential rents commonly known collectively as "rent control."

17.     The Property is also subject to the District's laws and regulations pertaining to the health, safety, and security of residential premises commonly known collectively as the "housing code."

18.     As a result of the Property's being subject to rent control as well as its age, condition, and location, its rental rates are among the lowest available in Northwest Washington for comparably sized units.

19.     Because of its low rents, the Property generates revenue barely sufficient to cover operating expenses and taxes.

20.     At current rents and as currently configured, even at full occupancy the Property would not generate sufficient cash flow, after operating expenses and taxes, to pay for or justify the financing of major capital improvements.

21.     Because of the Property's current condition and litigation posture, as alleged more fully below, Jefferson-11th Street, LLC has been unable (since December 2017) to obtain general liability coverage for the Property, thereby exacerbating the risks associated with owning the Property.

**Property Condition**

22.     On information and belief, the Property has had limited structural modifications or structural repairs since it was originally built in or about 1923.

23.     The Property contains a boiler dating from the 1980s, lacks central air conditioning, and requires major structural repairs (including to the foundation) and major improvements to or replacement of all systems.

24.     The Property also needs substantial interior repairs and rehabilitation, including repair and replacement of many interior floors, walls, and ceilings, some of which are known to cover asbestos and lead paint.

25.     In the absence of a substantial rehabilitation, the Property has necessarily required constant repairs, including structural repairs, interior repairs, and repairs to systems.

**Jefferson-11th Street, LLC's Efforts to Rehabilitate the Property**

26.     At various times since 2012, Jefferson-11th Street, LLC has planned and attempted to improve and rehabilitate the Property while also raising rents within the limits allowed by law.

27.     In 2012, Jefferson-11th Street, LLC sought the consent of 70% of the Property's tenants for a voluntary rehabilitation and rent increases as allowed by the District of Columbia Rental Housing Act of 1985 ("**Housing Act**").

28.     Jefferson-11th Street, LLC's proposed 2012 rehabilitation would have cost approximately $750,000 to $1 million and would have involved the installation of a new roof, new bathrooms and kitchens, through-the-wall heating and air conditioning units, cosmetic upgrades to hallways and floors, and would have increased rents between $50 to $100 per unit per month.

29.     Jefferson-11th Street, LLC was unable to obtain 70% consent to the 2012 voluntary rehabilitation plan from Property tenants or residents.

30.     As alleged in greater detail further below, from late 2012 through 2015, Jefferson-11th Street, LLC attempted to obtain rent adjustments through the filing of hardship petitions under the Housing Act, which permits housing providers to seek rent adjustments above the automatic yearly adjustments otherwise allowed by law and thereby generate a 12% rate of return on equity.

31.     Prior to September 24, 2012, Jefferson-11th Street, LLC had not previously filed a hardship petition for the Property and instead had taken only the yearly automatic rent increases allowed by law.

**Hardship Petition No. 20,888**

32.     On September 24, 2012, Jefferson-11th Street, LLC filed Hardship Petition No. 20,888 ("**HP 20,888**") with the District of Columbia's Office of the Rent Administrator ("**Rent Administrator**").

33.     HP 20,888 sought to raise rents at the Property by 31.5% to achieve the 12% rate of return allowed by law.

34.     By early 2013, Jefferson-11th Street, LLC was planning upgrades that included construction of a new secondary entrance on the Property's Girard Street side and the

construction of six to eleven new apartment units in the Property's basement to add to the Property's rental income, thereby supporting overall Property upgrades and justifying continued operation of the Property as rental housing.

35.     On January 18, 2013, the Rent Administrator granted HP 20,888, and issued an order conditionally permitting Jefferson-11th Street, LLC to raise rents at the Property by 31.5% ("**HP 20,888 Order**").

**Tenants' and Affiliates' Scheme to Obtain Substantial**
**Property Improvements Without Incurring Rent Increases**

36.     On information and belief, in or about January 2013 certain tenants or residents of the Property, assisted by and acting in concert with defendant LEDC and possibly others presently unknown to Jefferson-11th Street, LLC ("**Tenants and Affiliates**"), began to formulate a scheme to obtain substantial Property improvements but without incurring rent increases ("**Scheme**").

37.     On information and belief, Tenants and Affiliates initially formulated the Scheme as a means of opposing HP 20,888 and blocking the rent increase permitted by the HP 20,888 Order, but they subsequently expanded and continued the Scheme to encompass and thwart Jefferson-11th Street, LLC's every subsequent effort to improve and rehabilitate the Property in a commercially reasonable manner and raise rents as allowed by law.

38.     On information and belief, the Scheme consists of deliberately leveraging complaints about the Property's condition and chronic need of repair into seriatim claims of housing code violations put forth with the ulterior purposes of:  (a) obtaining various Property repairs and improvements under color of law but without incurring corresponding rent increases otherwise allowed by law; and (b) artificially suppressing the fair market value of the Property so

that the Property remains within the economic reach of tenants to purchase for themselves at a future time in exercise of their TOPA rights.

**Initial Implementation of the Scheme**

39.     On or about January 31 and February 19, 2013, certain tenants or residents of the Property objected to the HP 20,888 Order, complaining, among other things, of housing code violations at the Property.

40.     On information and belief, the January and February 2013 objections to the HP 20,888 Order were filed and prosecuted in furtherance of the Scheme.

41.     On March 14, 2013, HP 20,888 was transferred to the District's Office of Administrative Hearings ("**OAH**") for further proceedings on the objections filed.

42.     On information and belief, on March 19, 2013, in furtherance of the Scheme, certain tenants or residents of the Property, with the assistance and encouragement of defendant LEDC and possibly others presently unknown to Jefferson-11th Street, LLC, incorporated defendant Tenants' Association, which thereafter joined Tenants and Affiliates and conspired with them to carry out the Scheme.

**Tenant Petition No. 30,391**

43.     On May 7, 2013, the Tenants' Association filed Tenant Petition No. 30,391 ("**TP 30,391**") with the District's Rental Accommodations Division ("**RAD**") under the Housing Act on behalf of nineteen tenants or residents of the Property alleging, among other things, that Jefferson-11th Street, LLC impermissibly raised rents while Property units were not in substantial compliance with the housing code.

44.     On information and belief, TP 30,391 was filed and prosecuted in furtherance of the Scheme.

45.     In the normal course, TP 30,391 was transferred to OAH for further proceedings, which were stayed pending resolution of HP 20,888.

46.     In or about May 2013, Jefferson-11th Street, LLC abated or otherwise satisfactorily resolved (at a cost of nearly $40,000) 88 housing code violations as identified on Notices of Violation ("**NOVs**") issued by the District of Columbia Department of Consumer and Regulatory Affairs ("**DCRA**") following inspections of the Property on May 6, 7, and 8, 2013.

47.     On or about July 26, 2013, Tenants and Affiliates moved in the OAH to consolidate HP 20,888 and TP 30,391, and the cases were thereafter consolidated.

48.     On February 6, 2014, OAH determined that the Rent Administrator had failed to give proper notice of HP 20,888, vacated the HP 20,888 Order, remanded HP 20,888 to the Rent Administrator for proper service and an opportunity for objecting tenants to be heard before HP 20,888 was decided, and ordered Jefferson-11th Street, LLC to remand all increased rents collected pursuant to the HP 20,888 Order.

49.     In or about February 2014, Jefferson-11th Street, LLC abated or otherwise satisfactorily resolved (at a cost of nearly $21,000) 34 housing code violations as identified on new NOVs issued by DCRA following inspections of the Property on February 14, 2014.

**Re-filed HP 20,888**

50.     On March 11, 2014, Jefferson-11th Street, LLC re-filed HP 20,888 with updated financial information.

**BZA Application No. 18790**

51.     On April 24, 2014, Jefferson-11th Street, LLC filed application No. 18790 with the District's Board of Zoning Adjustment for a zoning variance to accommodate the Property's proposed new basement apartment units ("**BZA 18790**").

52.     As eventually formulated, BZA 18790 sought a variance to create nine new basement units, each with direct outdoor access, and would have upgraded the existing first-floor and second-floor units and the entire Property with improved storm drainage, improved water, sanitary, and electrical distribution, new landscaping, a new basement slab, new concrete basement column footings, new basement foundational underpinning, masonry and façade repair, new structural steel, new insulation, new exterior waterproofing, a new roof, new interior doors, new windows, new finish hardware, new interior walls, new flooring, new kitchen cabinets (with granite countertops), new kitchen appliances, new plumbing, new plumbing fixtures, new electrical system, new electrical fixtures, a sprinkler system, and new heating and air-conditioning systems.

53.     The Property improvements contemplated by BZA 18790 would not have raised rents for existing tenants or residents of the Property, who would have been temporarily re-located to upgraded existing units within the Property so that they would not have to vacate the Property during the upgrade of their own units.

54.     Tenants and Affiliates filed letters with the Board of Zoning Adjustment in opposition to BZA 18790.

55.     On information and belief, Tenants' and Affiliates' letters in opposition to BZA 18790 were filed in furtherance of the Scheme.

**Second HP 20,888 Order**

56.     On July 3, 2014, the Rent Administrator granted re-filed HP 20,888 and issued an order ("**Second HP 20,888 Order**") conditionally permitting Jefferson-11th Street, LLC to raise rents at the Property by 31.3% but providing that no increase was to be implemented if a rental unit or common areas in the Property were in violation of the housing code.

57.     On or about August 6, 2014, the Tenants' Association filed exceptions and objections to the Second HP 20,888 Order alleging, among other things, various housing code violations, and HP 20,888 was thereafter again transferred to OAH for further proceedings.

58.     On information and belief, the Tenants' Association's August 6, 2014, exceptions and objections to HP 20,888 were filed and prosecuted in furtherance of the Scheme.

**DCRA's Five-Year Proactive Inspection Certification**

59.     On October 29, 2014, DCRA notified Jefferson-11th Street, LLC by letter designated "Proactive Inspection Certification" that, following inspection by DCRA, the Property was found to be in compliance with all applicable building codes and would be placed on a five-year inspection cycle.

60.     Accompanying DCRA's notification was a five-year Certificate of Compliance for the Property issued May 29, 2014, valid for five years through May 28, 2019.

61.     On information and belief, DCRA's proactive inspection Certificates of Compliance, though worded in terms of compliance with applicable building codes, also signify and are intended to encompass certifications of compliance with applicable housing codes.

**Hearing on BZA 18790**

62.     On November 18, 2014, at a District Board of Zoning Adjustment hearing on BZA 18790, Tenants and Affiliates testified in opposition to the application.

63.     On information and belief, Tenants' and Affiliates' testimony in opposition to BZA 18790 was given in furtherance of the Scheme.

64.     On January 13, 2015, the District's Board of Zoning Adjustment voted to deny BZA 18790.

65.     On January 16, 2015, OAH granted Tenants' and Affiliates' partial summary judgment motion, which challenged whether re-filed HP 20,888 properly disclosed encumbrances on the Property.

66.     Rather than appeal from OAH's order, Jefferson-11th Street, LLC determined voluntarily to withdraw re-filed HP 20,888, which withdrawal was accomplished by OAH order of July 6, 2015, as alleged more fully further below.

67.     In or about March 2015, Jefferson-11th Street, LLC abated or otherwise satisfactorily resolved (at a cost of approximately $22,000) 93 housing code violations as identified on new NOVs issued by DCRA following inspections of the Property on December 8, 2014 (but not received by Jefferson-11th Street, LLC until February 28, 2015).

**Tenant Petition No. 30,690**

68.     On July 2, 2015, the Tenants' Association, on behalf of tenants or residents of fifteen Property units, filed Tenant Petition No. 30,690 with RAD under the Housing Act complaining of conditions at the Property and seeking, among other remedies, an order prohibiting rent increases pending correction of all alleged housing code violations and a 100% refund of rents paid from April 17, 2015 ("**TP 30,690**").

69.     On information and belief, TP 30,690 was filed and prosecuted in furtherance of the Scheme.

70.     In the normal course, TP 30,690 was transferred to OAH for further proceedings.

71.     On July 6, 2015, OAH vacated the Second HP 20,888 Order, dismissed Tenants' and Affiliates' pending exceptions and objections to HP 20,888 as moot, and granted Jefferson-11th Street, LLC's motion voluntarily to withdraw re-filed HP 20,888.

- 12 -

72.     On July 24, 2015, the District's Board of Zoning Adjustment issued its decision and order denying BZA 18790.

**Hardship Petition No. 20,901**

73.     On July 31, 2015, Jefferson-11th Street, LLC filed new Hardship Petition No. 20,901 with the Rent Administrator ("**HP 20,901**").

74.     HP 20,901 sought to raise rents at the Property by 49.5% to achieve the 12% rate of return allowed by law.

75.     By the time HP 20,901 was filed, Jefferson-11th Street, LLC's plan to improve and rehabilitate the Property involved reconfiguring the entire Property to create six new units in the basement, ten new units on the first floor (in place of the existing twelve first-floor units), and ten new units on the second floor (in place of the existing thirteen second-floor units).

76.     Jefferson-11th Street, LLC's revised configuration for the Property would have provided upgraded and enlarged apartments to existing tenants or residents with increased rents implemented over time.

77.     On August 21, 2015, petitioning tenants voluntarily withdrew the petition in TP 30,391 in the course of proceedings in TP 30,690.

78.     On October 6, 2015, the Rent Administrator conditionally granted HP 20,901 to the extent of permitting Jefferson-11th Street, LLC to increase rents at the Property by 36.81% ("**HP 20,901 Order**").

79.     On November 10, 2015, the Tenants' Association filed with RAD objections and exceptions to the findings, conclusions, and calculations underlying the HP 20,901 Order and sought reversal of the HP 20,901 Order and dismissal of HP 20,901.

80. Among other grounds raised in objection to the HP 20,901 Order, the Tenants' Association asserted that substantial housing code violations at the Property barred any rent increase.

81. On information and belief, the Tenants' Association's objections and exceptions to the HP 20,901 Order were filed and prosecuted in furtherance of the Scheme.

82. HP 20,901 was thereafter transferred to OAH for further proceedings.

**Jefferson-11th Street, LLC's Substantial Rehabilitation Plan**

83. Because Jefferson-11th Street, LLC's efforts to improve the Property and raise rents as allowed by law through a voluntary proceeding and hardship petitions and to subsidize improvements to the entire Property by adding market-rate rental apartments to the basement were thwarted by Tenants and Affiliates and possibly others presently unknown, Jefferson-11th Street, LLC determined to improve and substantially rehabilitate the Property and raise rents through the process of substantial rehabilitation under the Housing Act, which permits the Rent Administrator to consider a housing provider's petition for substantial rehabilitation of rental units and for an increase in rents no greater than the equivalent of 125% of the rent charged prior to substantial rehabilitation.

84. To this end, beginning in late 2015, Jefferson-11th Street, LLC formulated a plan to substantially rehabilitate the Property and increase rents under the Housing Act ("**SR Plan**").

85. The SR Plan called for: (a) the complete gutting of the entire Property (including the basement); (b) resurfacing the basement floor and installing new basement walls completely sealed; (c) replacement of the roof; (d) demolition of each rental unit and replacement with new units (including new basement units with private terrace entrances), each upgraded with new interior walls and floors, a dedicated heating and cooling system, new electric lighting and

plumbing fixtures, and new bathroom and kitchen appliances, cabinets, countertops, and vanities; (e) demolition and removal of the Property's existing boiler, plumbing, and electrical systems and replacement with modern code-compliant systems, fixtures, and appliances; (f) removal of potentially hazardous lead-based paint and asbestos; and (g) upgrades to lobby and common areas.

86.     In response to DCRA requests, the SR Plan was subsequently amended to add the installation of a new code-compliant fire-life safety system (including sprinkler system and annunciation system), the creation of a new secondary fire exit and new secondary fire staircase, and the replacement of the existing interior staircase.

87.     The SR Plan would have required the re-location of Property tenants and residents during construction, for which Jefferson-11th Street, LLC would pay the re-location allowance prescribed by the Housing Act.

88.     At the completion of SR Plan construction, Property tenants and residents would be permitted to return to the Property and re-rent their former units (or comparably sized units) at a newly authorized rent ceiling prescribed by the Rent Administrator in accordance with the Housing Act.

89.     Since late 2015, Jefferson-11th Street, LLC has taken concrete steps to advance and implement the SR Plan, including the engagement of professionals for legal, architectural, construction, and engineering services; obtaining drawings, reports, and estimates; obtaining or renewing permits for demolition, construction, and repair; submitting plans and drawings for permit approval to DCRA and revising such plans in response to DCRA comments and requirements; and negotiating with lending institutions for construction financing.

**Substantial Rehabilitation Petition No. 20,129**

90.     In furtherance of the SR Plan, on April 13, 2016, Jefferson-11th Street, LLC filed Substantial Rehabilitation Petition No. 20,129 with the Rent Administrator for the substantial rehabilitation of the Property under the Housing Act ("**SR 20,129**").

91.     SR 20,129 reflected proposed renovation costs totaling $2.6 million, rent increases of 49.5%, and would require tenants and residents to vacate the Property for eighteen to twenty-four months during construction.

92.     In the normal course, the Rent Administrator transferred SR 20,129 to OAH for further proceedings.

**New DCRA Property Inspections**

93.     May 20, 2016, was the sixteenth and final day of hearings in TP 30,690.

94.     Less than one month later on June 10 and 17, 2016, DCRA inspectors conducted Property-wide inspections.

95.     On information and belief, DCRA's June 2016 inspections were instigated by Tenants and Affiliates and perhaps others presently unknown to Jefferson-11th Street, LLC in furtherance of the Scheme as a predicate to the District's Receivership Case (as defined further below).

96.     On or about June 14 and 21, 2016, DCRA served new NOVs on Jefferson-11th Street, LLC identifying 151 housing code violations following the June 10 and 17, 2016, Property inspections.

97.     Extensions of time to abate the newly asserted violations were requested and granted, and DCRA re-inspected the Property on September 13 and 21, 2016, during which 35 violations were found to remain.

**Arrowhead's Mold Inspections**

98.     On information and belief, on or about August 18, 2016, Arrowhead Consulting

Inc. ("**Arrowhead**") conducted the first of three mold inspections of the Property, found

evidence of fungal growth affecting five units at the Property, and recommended remediation in

accordance with existing District regulations regulating mold removal.

99.     On information and belief, at an unknown time Arrowhead conducted a second

mold inspection of the Property.

100.    On information and belief, Arrowhead's first and second inspections were

conducted at the instigation of Tenants and Affiliates and possibly others presently unknown to

Jefferson-11th Street, LLC in furtherance of the Scheme as a predicate to the Tenants' Mold Case

(as defined further below).

101.    Arrowhead's first and second inspections and the results thereof did not become

known to Jefferson-11th Street, LLC until after the commencement of the Tenants' Mold Case

(as defined further below).

102.    Jefferson-11th Street, LLC's SR Plan would by its nature have remediated any

indoor mold at the Property.

**HP 20,901 Withdrawn**

103.    On October 4, 2016, OAH granted Jefferson-11th Street, LLC's motion to

withdraw HP 20,901 in favor of SR 20,129 and vacated the HP 20,901 Order.

104.    On October 27, 2016, OAH granted Jefferson-11th Street, LLC additional time to

November 11, 2016, to supplement SR 20,129.

105.     On November 18, 2016, the Tenants' Association moved in SR 20,129 for

sanctions against Jefferson-11[th] Street, LLC for failure to supplement the petition by November

11, 2016.

**Tenants' Mold Case**

106.     On November 3, 2016, five Property tenants ("**Mold Case Plaintiffs**")

commenced a two-count action in the DC Superior Court against Jefferson-11th Street, LLC and

one of its members alleging breach of the implied warranty of habitability and violation of

statutory law requiring remediation of indoor mold and seeking treble damages, reimbursement

of mold assessment costs, and attorneys' fees (*Espinal, et al. v. Jefferson-11[th] Street, L.L.C., et

al.*, No. 2016 CA 8084 B (D.C. Super. Ct.) ("**Tenants' Mold Case**").

107.     On information and belief, the Mold Case Plaintiffs commenced and now

prosecute the Tenants' Mold Case in collaboration with Tenants and Affiliates and possibly

others presently unknown in furtherance of the Scheme.

108.     On February 1, 2017, OAH denied the Tenants' Association's request for

attorneys' fees sanctions against Jefferson-11[th] Street, LLC in SR 20,129 and ordered Jefferson-

11th Street, LLC to supplement SR 20,129 by April 28, 2017.

109.     On April 1, 2017, Jefferson-11th Street, LLC provided supplementary SR 20,129

information to OAH, including a preliminary breakdown of anticipated costs amounting to

nearly $3.8 million.

**District's Receivership Case**

110.     Events in SR 20,129 were overtaken by the OAG's commencement on April 24,

2017, of a three-count action in the DC Superior Court against Jefferson-11th Street, LLC, its

management agent, and two individual members of those entities (*District of Columbia v.*

*Jefferson-11th Street, LLC, et al.*, No. 2017 CA 2837 2 (D.C. Super. Ct.) ("**District's**

**Receivership Case**").

111.    On information and belief, Tenants and Affiliates and possibly others presently

unknown to Jefferson-11th Street, LLC induced the OAG to commence and prosecute the

District's Receivership Case in furtherance of the Scheme.

112.    Based on the 35 unabated housing code violations (of the original 151 such

violations) resulting from DCRA's June 2016 inspections of the Property, the complaint in the

District's Receivership Case alleged a pattern of neglect in the operation of the Property and

sought the appointment of a receiver for the Property and injunctive relief under the District's

Tenant Receivership Act, D.C. Code §§ 42-3651.01 to -.08 ("**TRA**"), and also sought relief for

allegedly unlawful trade practices under the District's Consumer Protection Procedures Act, D.C.

Code §§ 28-3901-3913.

113.    Had Jefferson-11th Street, LLC not been impaired by the Scheme from

improving, upgrading, and substantially rehabilitating the Property in accordance with its plans

from 2012 and thereafter, there would have been no grounds for the District's Receivership Case.

114.    On May 1, 2017, Tenants and Affiliates moved to dismiss SR 20,129 for lack of

sufficient detail.

115.    On information and belief, Tenants' and Affiliates' motion to dismiss SR 20,129

was filed and prosecuted in furtherance of the Scheme.

116.    On May 10, 2017, OAH issued its final order in TP 30,690.  The final order

sustained a minority of the housing code violations alleged, awarded damages to the petitioners,

and imposed a fine on Jefferson-11th Street, LLC.

117.    Jefferson-11th Street, LLC's appeal to the District's Rental Housing Commission from OAH's final order in TP 30,690 is *sub judice*.

118.    On June 29, 2017, the DC Superior Court administratively consolidated the Tenants' Mold Case and the District's Receivership Case, and the two cases are currently *sub judice*.

119.    On July 19, 2017, Jefferson-11th Street, LLC and DCRA reached agreement to settle, as abated or otherwise satisfactorily resolved, 22 of the 35 unabated housing code violations underlying the OAG's complaint in the District's Receivership Case ("**DCRA Settlement Agreement**"), leaving only 13 of the complaint's original 35 alleged housing code violations unabated.

120.    On August 15, 2017, OAH dismissed SR 20,129 without prejudice as unripe for adjudication for lack of sufficient detail for, among other things, Jefferson-11th Street, LLC's failure to include detailed plans, specifications, and a building permit.

121.    As of August 15, 2017, Jefferson-11th Street, LLC was pressing for necessary permits, approvals, estimates, and other details and intended to re-file SR 20,129 as soon as this information was in hand.

122.    On September 19, 2017, Jefferson-11th Street, LLC filed in the District's Receivership Case a plan to abate the housing code violations alleged in the OAG's complaint.

123.    Jefferson-11th Street, LLC's proposed abatement plan identified SR 20,129 as Jefferson-11th Street, LLC's long-term plan for dealing with the housing code violations alleged by the OAG, attached a summary of SR 20,129, and represented that Jefferson-11th Street, LLC anticipated re-submitting SR 20,129 by January 1, 2018.

124.    In support of its proposed abatement plan, Jefferson-11[th] Street, LLC offered the DCRA Settlement Agreement as evidence that 22 of the 35 housing code infractions alleged in the OAG's complaint in the District's Receivership Case had already been cured to DCRA's satisfaction.

125.    Jefferson-11th Street, LLC's proposed abatement plan also observed that, since the filing of the OAG's complaint on April 24, 2017, Property tenants had caused DCRA to conduct new Property inspections on July 12 and September 8, 2017, resulting in 24 new housing code violations as described on NOVs served by DCRA.

126.    On information and belief, DCRA was induced by Tenants and Affiliates and possibly others presently unknown to Jefferson-11[th] Street, LLC to conduct the 2017 inspections in furtherance of the Scheme.

127.    In or about August 2017, Jefferson-11th Street, LLC abated or otherwise satisfactorily resolved (at a cost of approximately $12,000) 18 of the 24 new housing code violations resulting from DCRA's 2017 inspections, leaving only 6 of such violations unabated at the time of the DC Superior Court's appointment of the Receiver (as defined further below).

128.    On October 27, 2017, the DC Superior Court rejected Jefferson-11th Street, LLC's proposed abatement plan as insufficient to address the alleged housing code violations, deemed the DCRA Settlement Agreement to be, as a matter of law, no defense to the OAG's pattern-of-neglect allegations, and granted the OAG's request to appoint a TRA receiver for the Property.

129.    On November 17, 2017, the DC Superior Court appointed Benjamin Gilmore as receiver of the Property ("**Receiver**").

130.     The DC Superior Court's order appointing the Receiver granted him sole and

plenary authority to collect rents, operate the Property in accordance with the powers conferred

by the TRA, and abate not merely the housing code violations alleged in the OAG's complaint,

but all violations "that currently exist or may exist in the future at the Property while this Order

is in effect."

**The Receiver's "Scenario 2" Abatement Plan**

131.     On January 2, 2018, the Receiver submitted two alternative plans to the DC

Superior Court for extensive exterior and interior work at the Property ostensibly "aimed at

eradicating conditions that threaten the health, safety and security of the residents of these

properties [*sic*] and bringing the properties [*sic*] into compliance with the D.C. Code."

132.     One of the Receiver's alternative abatement plans for interior work, designated

"Scenario 2," called for code compliance and remediation work *"*fall[ing] just short of complete

renovation."

133.     The Receiver estimated the "Scenario 2" interior work would cost $1,618,190

(plus another $147,737.50 for exterior work) and would require all tenants to vacate the Property

for the entire fifteen-month duration of the work until estimated completion at the end of June

2019.

134.     The Receiver's abatement plan, including the "Scenario 2" work, would qualify

as a substantial rehabilitation under the Housing Act, which provides that repairs in excess of

50% of a property's assessed valuation qualify a property for a substantial rehabilitation.

135.     The Receiver's "Scenario 2" proposed no increase in tenants' rents during the

tenants' anticipated vacatur from the Property, meaning that Jefferson-11th Street, LLC would be

required to pay the anticipated difference between tenants' existing rents at the Property and such

higher rents (plus any security deposits and moving costs) they would have to pay for temporary rental housing elsewhere for the duration of the "Scenario 2" work.

136.    The Receiver's "Scenario 2" further proposed that upon completion of the work all tenants be permitted to return to the Property to units of comparable size as their existing units with no increase in rents.

137.    On February 9, 2018, the Receiver submitted to the DC Superior Court a "Scenario 2" work plan and schedule, which assumed a start date of April 1, 2018, and a completion date of June 30, 2019.

138.    On March 30, 2018, the DC Superior Court adopted the Receiver's "Scenario 2" abatement plan for the Property and ordered Jefferson-11th Street, LLC to pay the Receiver more than $2 million to fund the abatement plan.

139.    Jefferson-11th Street, LLC has paid the required sums to the Receiver, which currently amount to $2,072,738.

140.    The Receiver has commenced work to carry out the abatement plan adopted by the DC Superior Court.

141.    On July 2, 2018, the Receiver reported to the DC Superior Court that he anticipated a three-month delay in completion of all work under his "Scenario 2" abatement plan (*i.e.*, to September 30, 2019), and that roof-related expenditures had exceeded the amount originally budgeted ($58,790) by almost $10,000.

**The Receiver's Proposed Relocation Budget**

142.    On July 20, 2018, the Receiver filed his "Proposed Relocation Budget," which proposed the relocation of all Property tenants to alternative housing for the duration of the "Scenario 2" work at a cost of $260,442 (for rent subsidies, security deposits, and moving fees)

to be paid by Jefferson-11th Street, LLC or the other respondents/defendants in the District's Receivership Case.

143.    The Receiver's proposed relocation budget far exceeds the relocation assistance amounts Jefferson-11th Street, LLC would be required to pay under the Housing Act for tenants displaced by a substantial rehabilitation in accordance with SR 20,129.

144.    On July 30, 2018, the DC Superior Court stated that Jefferson-11th Street, LLC and the other defendants/respondents in the District's Receivership Case would be expected to pay all tenant relocation expenses in the Receiver's relocation budget.

145.    On July 30, 2018, the DC Superior Court also declared that the District's Receivership Case was limited to "get[ting] this building up to code" and, in response to Jefferson-11th Street, LLC's suggestion that elements of the SR Plan be incorporated into the Receiver's "Scenario 2" abatement plan, declared that "if [Jefferson-11th Street, LLC] want[s] to do more than what's in the receiver's plan, you can negotiate with the other parties and see if they'll agree, but I'm not going to order it."

146.    On November 19, 2018, the DC Superior Court repeated its refusal to entertain Jefferson-11th Street, LLC's proposal for the substantial rehabilitation of the Property beyond the scope of the Receiver's "Scenario 2" abatement plan except on consent of the other parties to the District's Receivership Case, which consent, despite several attempts at mediation, has not been obtained.

147.    On January 9, 2019, the Receiver advised the DC Superior Court that each exploration of the Property appears to reveal a new deficiency that must be remedied, and he reported the discovery of conditions requiring the expansion of his "Scenario 2" plan, budget, and timeline, including:  the complete failure of the Property's boiler (necessitating replacement

at an estimated cost of $150,000), corrosion beyond repair of nearly all of the building's steel support columns (necessitating replacement, together with their concrete piers, at an estimated cost of $75,000), and obstructed or damaged vertical waste lines running to the sewer system and partial sewer collapse under the building (requiring repairs estimated at between $17,000 and $25,000), totaling an additional $250,000, which (together with the Receiver's recommended 25% contingency, but not including the relocation budget) increases the total estimated "Scenario 2" budget to $1,812,500 (up from $1,618,190) and extends the "Scenario 2" estimated completion to the first quarter of 2020.

148.    Jefferson-11th Street, LLC's SR Plan (and earlier plans to improve and rehabilitate the Property) would have addressed the boiler, the steel support columns, and the waste line blockages.

149.    On February 12, 2019, the Receiver submitted an amended relocation budget totaling $270,773 (revised upward from $260,442).

150.    On information and belief, alterations to the Property already made and to be made by the Receiver pursuant to "Scenario 2" would be of limited utility and value in a post-receivership substantial rehabilitation by Jefferson-11th Street, LLC in accordance with the SR Plan because they would likely have to be demolished or significantly altered to make the SR Plan commercially viable.

151.    For example:  (a) the new boiler that the Receiver plans to install in the Property at Jefferson-11[th] Street, LLC's expense ($150,000) will not comport with the SR Plan's central heating and air-conditioning systems and will require the Receiver's boiler to be removed or re-configured, will require new conduits to be installed in the Receiver's newly renovated units (which will require demolition and new construction), and will require a new condenser unit to

be installed on the roof, which will likely require replacement of at least a portion of the Receiver's new roof; (b) jacking up of the foundation in order to conduct necessary foundational underpinning and reconstruction of the concrete piers and steel support columns will likely crack exterior pointing already conducted by the Receiver and require re-pointing; and (c) SR Plan upgrades to the electrical and sprinkler systems will require much of the Receiver's "Scenario 2" interior wall and ceiling work to be torn out and reconstructed.

152.    The District's Receivership Case:  (a) ousts Jefferson-11th Street, LLC from control of the Property, from its income stream, and from a guiding role in its renovation; (b) prolongs Jefferson-11th Street, LLC's exacerbated risks of bare legal ownership of an uninsurable loss-making Property; (c) requires Jefferson-11th Street, LLC to pay all expenses associated with what is tantamount to the Property's substantial rehabilitation by the Receiver (including tenant relocation expenses), but confers none of the benefits of a substantial rehabilitation under the Housing Act such as increased rents and prescribed relocation expenses; (d) deprives Jefferson-11th Street, LLC of reasonable economic justification for undertaking a substantial rehabilitation of the Property in accordance with the SR Plan under the Housing Act after the receivership; and (e) bars any other use of the Property that will provide Jefferson-11th Street, LLC with a reasonable rate of return.

**COUNT I**
**(Taking of Private Property)**
**(against the District and the Receiver)**

153.    Jefferson-11th Street, LLC repeats and realleges each and every allegation above as if restated here at length.

154.    The U.S. Constitution's Fifth Amendment prohibits the District from taking private property for public use without just compensation and from taking private property for a private purpose.

155.    Jefferson-11th Street, LLC's property interests protected by the Fifth Amendment include the right to improve the Property, the reasonable expectancy of realizing the Property's enhanced market value and increased rents in accordance with the SR Plan and the Housing Act, and substantial sums of cash (currently totaling $2,072,738) that Jefferson-11th Street, LLC has been required to pay to the Receiver to fund the receiver's substantial rehabilitation of the Property (collectively, "**Protected Property Interests**").

156.    The Protected Property Interests are private property.

157.    On the pretext of "bringing the building up to code" in the District's Receivership Case, but in fact conducting what is tantamount to a complete renovation of the Property at the Receiver's direction and Jefferson-11th Street, LLC's open-ended expense, the District has frustrated and interfered with Jefferson-11th Street, LLC's reasonable investment-backed expectancies of the increased value and rents the Property would have achieved through a substantial rehabilitation under the Housing Act, has nearly wiped out Jefferson-11th Street, LLC's 100% equity in the Property, has made it impossible for Jefferson-11th Street, LLC to realize a reasonable rate of return from the Property after the receivership, and has irredeemably deprived Jefferson-11th Street, LLC of a substantial portion of the value of the cash it has paid into the receivership, of which Jefferson-11th Street, LLC will not recover the equivalent value in the Property after the receivership.

158.    In particular, the District has taken:  (a)  the reasonable expectancy of the excess in market value the Property would have achieved under the SR Plan over the market value the

Property will have on the completion of the Receiver's "Scenario 2" abatement work; (b) the reasonable expectancy of the increased rent revenues the Property would have achieved under the Housing Act under a substantial rehabilitation pursuant to the SR Plan; (c) the lion's share of Jefferson-11[th] Street, LLC's equity in the Property; (d) the portion of the $2,072,738 that Jefferson-11th Street, LLC has been required to pay into the receivership thus far but that Jefferson-11th Street, LLC will not recover in the form of improved Property value at the end of the receivership; and (e) the earning power of $2,072,738 during the period from payment of funds into the receivership until the receivership is terminated.

159.    The District has thereby deprived Jefferson-11th Street, LLC of all economically beneficial use of the Property and the Protected Property Interests and has prevented the Property from ever providing a reasonable rate of return.

160.    The District has offered no compensation for the taking of Jefferson-11th Street, LLC's Protected Property Interests.

161.    On information and belief, the District's taking of Jefferson-11th Street, LLC's Protected Property Interests is not for a public use but for a private purpose, namely, to prefer and protect the private interests of the Property's tenants and residents to purchase the Property for themselves in exercise of their TOPA rights.

162.    For the District's taking of the Protected Property Interests, Jefferson-11th Street, LLC is entitled to just compensation in an amount to be proved at trial.

163.    By reason of the District's conduct as alleged, Jefferson-11th Street, LLC is entitled to relief pursuant to 42 U.S.C. § 1983.

## COUNT II
### (Alternatively, Deprivation of Property without Due Process of Law)
### (against the District and the Receiver)

164.    Jefferson-11th Street, LLC repeats and realleges each and every allegation above as if restated here at length.

165.    The U.S. Constitution's Fifth Amendment prohibits the District from depriving any person of property without due process of law.

166.    Jefferson-11th Street, LLC's property interests protected by the Fifth Amendment include:  (a) the right to improve the Property in a commercially reasonable manner to increase its market value and realize a reasonable rate of return; and (b) the right to increase Property rents as allowed by the Housing Act.

167.    The District has deprived Jefferson-11th Street, LLC of its property by adopting the Receiver's "Scenario 2" abatement plan to the exclusion of any element of Jefferson-11th Street, LLC's SR Plan and has thereby irredeemably prevented Jefferson-11th Street, LLC from realizing a reasonable rate of return from the Property.

168.    The District's deprivation of Jefferson-11th Street, LLC's property resulted from a municipal policy, expressed in rulings of the DC Superior Court in the District's Receivership Case, which policy: (a) contrary to TRA §§ 42-3651.01 and 42-3651.06(d), authorizes the Receiver (i) to take actions beyond those necessary and proper to the maintenance and repair of the Property, and (ii) to make capital improvements to the Property beyond those necessary to abate housing code violations; and (b) unjustifiably requires the consent of the other parties to the District's Receivership Case in order for elements of Jefferson-11th Street, LLC's proposed abatement plan or SR Plan to be incorporated into the Receiver's abatement plan.

169.    The foregoing policy was imposed under color of law but without due process under the guise of "bringing the building up to code."

170.    The due process to which Jefferson-11th Street, LLC is entitled is a Receiver's abatement plan that is either: (a) confined within the limits of the TRA, or (b) incorporates reasonable elements of Jefferson-11th Street, LLC's proposed abatement plan or SR Plan, and that, in either case, does not deprive Jefferson-11th Street, LLC of the benefits to which it would be entitled for a substantial rehabilitation of the Property under the Housing Act and does not prevent Jefferson-11th Street, LLC from realizing a reasonable rate of return on the Property after the receivership.

171.    The resulting harms to Jefferson-11th Street, LLC include:  (a) loss of the improved value of the Property under the SR Plan and the benefits of a substantial rehabilitation of the Property under the Housing Act; (b) loss of the opportunity to achieve a reasonable rate of return on the Property; (c) loss of possession and control of the Property during the receivership; (d) undue elevation of the interests of the Property's tenants and residents to the unfair detriment of Jefferson-11th Street, LLC's interests; (e) unfair exposure to the risks of owning the Property without the benefit of liability insurance; (f) incurral of the otherwise avoidable costs of the Receiver's abatement plan and the Receiver's relocation budget; and (g) incurral of otherwise avoidable legal fees and other litigation-related costs.

172.    The District's denials of due process will continue to cause harm as long as the Receivership Case continues.

173.    As a result of the District's conduct, Jefferson-11th Street, LLC has suffered and will continue to suffer substantial loss and damages in amounts to be proved at trial.

174.    By reason of the District's conduct as alleged, Jefferson-11th Street, LLC is entitled to relief pursuant to 42 U.S.C. § 1983.

## COUNT III
**(Tortious Interference with Business Expectancy)**
**(against Tenants' Association, LEDC, and John Does 1-5)**

175.    Jefferson-11th Street, LLC repeats and realleges each and every allegation above as if restated here at length.

176.    At various times since 2012 and continuing to the present time as alleged, Jefferson-11th Street, LLC's attempts to improve and rehabilitate the Property gave rise to Jefferson-11th Street, LLC's reasonable business expectancies of enhancing the Property's market value, increasing rents as allowed by law, and realizing a commercially reasonable rate of return on the Property.

177.    From 2012 and thereafter, Tenants and Affiliates knew of Jefferson-11th Street, LLC's reasonable business expectancies.

178.    Through the Scheme, Tenants and Affiliates deliberately and intentionally interfered with, disrupted, and deprived Jefferson-11th Street, LLC of its reasonable business expectancies in the manner alleged.

179.    As a result of Tenants' and Affiliates' Scheme, Jefferson-11th Street, LLC has been damaged and continues to be damaged in amounts to be proved at trial.

WHEREFORE, plaintiff Jefferson-11th Street, LLC demands judgment against defendants and each of them as follows:

A.    On Count I, (i) a declaration that the TRA, as applied in the District's Receivership Case, has effected a taking of Jefferson-11th Street, LLC's private Property and Protected Property interests for a private purpose for which Jefferson-11th Street, LLC is entitled

to just compensation; and (ii) an award of just compensation against the District in an amount to be proved at trial;

       B.      On alternative Count II, compensatory damages in amounts to be proved at trial, together with pre- and post-judgment interest thereon as allowed by law;

       C.      On Count III, compensatory damages in amounts to be proved at trial, together with pre- and post-judgment interest thereon as allowed by law;

       D.      On all counts, attorneys' fees as allowed by law and the costs of the action; and

       E.      Such other and further relief as to the court seems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b), Fed. R. Civ. P., plaintiff demands trial by jury of all issues triable of right by jury.

Dated:  Washington, D.C.
      May 15, 2019

                                     BERLINER, CORCORAN & ROWE, LLP

By:    s/ James L. Marketos
          James L. Marketos, Esq.
          D.C. Bar No. 412953
          *jlm@bcr-dc.com*
          Melvin White, Esq.
          D.C. Bar No. 422087
          *mw@bcr-dc.com*
          Laina C. Lopez, Esq.
          D.C. Bar No. 477412
          lcl@bcr-dc.com

          Suite 1100
          1101 Seventeenth Street, N.W.
          Washington, D.C.  20036
          Tel. (202) 293-5555
          Fax (202) 293-9035

          *Attorneys for Plaintiff*