UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEFFERSON-11TH STREET, LLC,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA, et al.,

    *Defendants*.

Civil Action No. 1:19-cv-1416 (CJN)

## MEMORANDUM OPINION

Plaintiff Jefferson-11th Street, LLC owns an apartment building in Washington's Columbia Heights neighborhood. Compl. ¶ 10, ECF No. 1. The building is outdated and in need of repair, though it has remained partially occupied in recent years. *Id.* ¶¶ 10, 15, 21–25. After Jefferson engaged in a protracted battle with tenants over plans to improve the property and raise rents, the District of Columbia's Attorney General intervened and brought a civil suit against Jefferson in D.C. Superior Court in 2017. *Id.* ¶ 110. As part of that proceeding, the Superior Court placed the property in receivership and appointed a receiver to oversee the building's rehabilitation under a court-approved plan. *Id.* ¶¶ 129–40.

Jefferson subsequently brought this federal lawsuit, alleging that the District's suit and the ensuing receivership constitute an uncompensated taking of property under the Fifth Amendment, *id.* ¶¶ 153–63, or, in the alternative, a deprivation of property without due process of law, *id.* ¶¶ 163–74.[1] The Complaint also alleges a common law tortious interference with

---

[1] In addition to the District of Columbia, the Complaint names the receiver, Benjamin Gilmore, as a Defendant in Counts I and II. *Id.* ¶¶ 153–74.

1

business expectancy claim against Defendants 2724 11th St. NW Tenants' Association, Inc. ("Tenants") and the Latino Economic Development Corporation of Washington, D.C. ("LEDC"), an organization allegedly assisting the Tenants in their legal battle.

Both sets of Defendants moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). *See generally* Defs. The District of Columbia and Benjamin Gilmore's Mot. to Dismiss ("D.C. Mot."), ECF No. 10; Defs. 2724 11th St. NW Tenants' Ass'n, Inc. and Latino Econ. Dev. Corp. of Wash., D.C.'s Mot. to Dismiss ("Tenants' Mot."), ECF No 11. The Court agrees with the District that the ongoing proceedings in Superior Court "are judicial in nature and implicate important District interests; [that] those proceedings afford [Jefferson] an adequate opportunity to litigate its federal claims; and [that] there are no extraordinary circumstances warranting equitable relief." *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1128 (D.C. Cir. 2004). The Court therefore grants the District's Motion to Dismiss. Because that action "dismisse[s] all claims over which [the Court] has original jurisdiction," the Court declines to exercise supplemental jurisdiction over Count III of the Complaint and grants the Tenants' Motion to Dismiss. 28 U.S.C. § 1367(c)(3).

## I. Background

2724 11th Street NW is a century-old, two-story apartment building containing 26 residential apartments. Compl. ¶ 10. Plaintiff acquired the building in 2009 and owns the property outright. *Id.* ¶¶ 10–11. The units are rent-controlled and have not been updated in some time, so the tenants' rent is significantly below the market rate in the neighborhood. *Id.* ¶¶ 16–19. Because of the low rents and the moderate level of occupancy, the operation is not profitable. *Id.* ¶ 19. The building "lacks central air conditioning[] and requires major structural repairs . . . and major improvements to or replacement of all systems." *Id.* ¶ 23. It also needs

"substantial interior repairs and rehabilitation, including repair and replacement of many interior floors, walls, and ceilings, some of which are known to cover asbestos and lead paint." *Id.* ¶ 24.

Beginning in 2012, Jefferson began the first of its several attempts to overhaul the building. *Id.* ¶ 26. It tried to secure approval from a sufficient number of tenants to institute a voluntary rehabilitation plan that would have completely renovated the property and raised rents accordingly. *Id.* ¶¶ 27–28. The tenants did not agree. *Id.* ¶ 29. Jefferson then turned to the administrative process, filing a hardship petition with the District government to obtain permission to upgrade the property and raise rents unilaterally. *Id.* ¶¶ 32–35. Individual tenants, allegedly aided by LEDC, filed objections to the hardship petition. *Id.* ¶ 39. The newly incorporated Tenants Association then filed its own tenants' petition, seeking the government's assistance in remediating existing D.C. Housing Code violations. *Id.* ¶¶ 43–46. Several rounds of administrative petitions, hearings, and orders followed, along with multiple property inspections that found dozens of code violations in each instance. *Id.* ¶¶ 46–97. Jefferson alleges that it resolved most of the violations at substantial cost. *Id.* One inspection turned up evidence of mold in several units, prompting individual tenants to file a lawsuit in Superior Court to force Jefferson to alleviate the mold problem. *Id.* ¶¶ 98–102, 106–109.

On April 24, 2017, the District's Attorney General filed a three-count suit against Jefferson in D.C. Superior Court, seeking the appointment of a receiver to take control of the property and renovate it under the Tenant Receivership Act, D.C. Code. §§ 42-3651.01–.08; injunctive relief under the same statute, *id.*; and money damages for alleged unfair trade practices in violation of the District's Consumer Protection Procedures Act, *id.* §§ 28-3901–13. Compl. ¶¶ 110–12. Parallel administrative proceedings continued. *Id.* ¶¶ 114–21. Jefferson resolved many of the outstanding code violations and proposed to the Court a plan to abate the remainder,

3

but the District continued to conduct new inspections and to identify even more problems. *Id.*
¶¶ 122–28. The Superior Court therefore rejected Jefferson's proposal and granted the District's petition to appoint Defendant Benjamin Gilmore as receiver with "sole and plenary authority to collect rents, operate the Property in accordance with the powers conferred by the [Tenant Receivership Act], and abate not merely the housing code violations alleged in the [District's] complaint, but all violations that currently exist or may exist in the future at the Property while the [receivership] is in effect." *Id.* ¶¶ 128–30 (internal quotation omitted).

Thereafter, Gilmore submitted two potential abatement plans for the Court's review. *Id.* ¶ 131. The Court adopted the more extensive of the two, requiring Jefferson to contribute over $2 million toward the property's complete overhaul, as well as more than $260,000 to pay for the tenants to relocate temporarily during construction. *Id.* ¶¶ 139–43. The Superior Court declined to amend certain aspects of the plan at Jefferson's request, though it permitted Jefferson to negotiate with Gilmore to fund desired projects that exceeded the planned upgrades so as to accomplish all new work at the same time. *Id.* ¶¶ 144–46. As work began, Gilmore revised his cost estimate upwards. *Id.* ¶¶ 147–49. He also declined to amend his plan at Jefferson's request, even though Jefferson pointed out that some of the planned work (such as replacing the building's boiler rather than installing a central climate control system) would preclude future upgrades and would require the new work to be torn out and started from scratch. *Id.* ¶¶ 150–51.

Jefferson then turned to the federal courts for assistance. On May 15, 2019, it filed this lawsuit under 42 U.S.C. § 1983, seeking a declaration that the District's litigation and the Superior Court's actions constitute an impermissible taking of private property under the Constitution's Fifth Amendment, *id.* at 31, or, in the alternative, money damages for a deprivation of private property without due process, *id.* at 32. The Complaint also seeks

4

damages from the Tenants' Association and LEDC for allegedly scheming to thwart Jefferson's rehabilitation plans and thereby tortiously interfering with its business expectations. *Id.*

Both sets of Defendants move to dismiss. *See generally* D.C. Mot.; Tenants' Mot. The District first argues that the Court should abstain from this dispute under *Younger v. Harris*, 401 U.S. 37, 41 (1971). *See* D.C. Mot. at 6–8. It also argues that Defendant Gilmore is immune from suit as the Superior Court's agent, *id.* at 8–9, and that the Complaint fails to state a takings claim, *id.* at 9–16. The Tenants argue that the *Noerr-Pennington* Doctrine bars any suit against them for legitimately exercising their First Amendment rights, Tenants' Mot. at 7–11, and alternatively that the Complaint fails to state a claim for tortious interference with business expectancy, *id.* at 11–16. Because the Court resolves the District's Motion on the question of *Younger* abstention, it does not reach any other arguments.

## II. Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When evaluating a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], the Court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Atlas Brew Works, LLC v. Barr*, 391 F. Supp. 3d 6, 11 (D.D.C. 2019) (internal quotations and citations omitted). Although the Court accepts all well pleaded facts in the Complaint as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 554–55

5

(internal quotations and citations omitted). The claim to relief must be "plausible on its face," enough to "nudge[ the] claims across the line from conceivable to plausible." *Id.* at 570.

### III. Analysis

The Complaint alleges that the District of Columbia, acting through the Attorney General, the Superior Court, and the receiver, Gilmore, has effected a taking of

> (a) the reasonable expectancy of the excess in market value the Property would have achieved under [Jefferson's Substantial Rehabilitation] Plan over the market value the Property will have on the completion of the Receiver's "Scenario 2" abatement work;
>
> (b) the reasonable expectancy of the increased rent revenues the Property would have achieved under the Housing Act under a substantial rehabilitation . . . ;
>
> (c) the lion's share of [Jefferson's] equity in the Property;
>
> (d) the portion of the $2,072,738 that [Jefferson] has been required to pay into the receivership thus far but that [Jefferson] will not recover in the form of improved Property value at the end of the receivership; and
>
> (e) the earning power of $2,072,738 during the period from payment of funds into the receivership until the receivership is terminated.

Compl. ¶ 158. Jefferson alleges that "[t]he District has thereby deprived [it] of all economically beneficial use of the Property and the Protected Property Interests and has prevented the Property from ever providing a reasonable rate of return." *Id.* ¶ 159. The District responds that these same issues are currently being litigated in the Superior Court, undercutting the necessity of raising them in parallel proceedings here. *See* D.C. Mot. at 6–8.

Although the *Younger* doctrine originally applied only to ongoing criminal prosecutions in state court, 401 U.S. at 48–54, the Supreme Court later extended the doctrine to "pending civil court proceedings in which important state interests are involved." *JMM Corp.*, 378 F.3d at 1126 (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). "[E]xcept in extraordinary

6

circumstances, a federal court should not enjoin a pending state proceeding (including an administrative proceeding) that is judicial in nature and involves important state interests." *Id.* at 1120 (citing *Younger*, 401 U.S. at 41) (other citations omitted). *Younger* applies to the District of Columbia even if the federalism concerns underlying the doctrine are absent here. *Id.* at 1125.

In *JMM Corp.*, the District initiated administrative proceedings against an unlicensed adult video store. *Id.* at 1119. The store sued to enjoin the enforcement action in federal court, and then the District sued the store in Superior Court to enforce its order. *Id.* at 1120. The district court dismissed the federal suit on the basis of *Younger* abstention and the D.C. Circuit affirmed (deciding for the first time that the doctrine applies in the District of Columbia). *Id.* at 1120, 1128. In doing so, the Court of Appeals recognized that "the enforcement of zoning regulations . . . constitutes an important state interest." 378 F.3d at 1126. So long as the plaintiff has "'a full and fair opportunity to litigate' its constitutional claims" in Superior Court, abstention is appropriate. *Id.* at 1127 (quoting *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986)). Two exceptions to the doctrine are when "the pending [District] action was brought in bad faith or for the purpose of harassing" the plaintiff or "where a [District] statute is flagrantly and patently unconstitutional." *Id.* (internal quotations omitted).

Here, the District argues that its dispute with Jefferson is ongoing in Superior Court, that it relates to important District interests (health and safety regulation of housing), that Jefferson has an adequate forum in which to raise its constitutional concerns (Superior Court and the D.C. Court of Appeals), and that there is no allegation that the District brought the suit in bad faith. D.C. Mot. at 6–8. To be sure, the Complaint alleges that the Tenants Association and LEDC have acted in bad faith by "induc[ing] the [Attorney General] to commence and prosecute the

7

District's Receivership Case in furtherance of [their] Scheme [to gain control of the property],"
but the Complaint does not allege bad faith on the District's part. Compl. ¶ 111.

Jefferson responds by noting that abstention is disfavored and that "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." *See* Pl.'s Mem. of P. & A. in Opp'n to Mot. to Dismiss of Defs. D.C. & Benjamin Gilmore ("Pl.'s D.C. Opp'n") at 5, ECF No. 14 (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans* ("*NOPSI*"), 491 U.S. 350, 358 (1989)). It is true that, "[i]n the main, federal courts are obliged to decide cases within the scope of federal jurisdiction" and therefore "[a]bstention is not in order simply because a pending [Superior Court] proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (citing *NOPSI*, 491 U.S. at 373). "[F]ederal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refus[e] to decide a case in deference to the States.'" *Id.* at 73 (quoting *NOPSI*, 491 U.S. at 368 (alteration in original)).

But there are certain "exceptional" circumstances in which *Younger* does apply: (1) "ongoing state criminal prosecutions;" (2) "certain civil enforcement proceedings" that are "akin to a criminal prosecution" and "are characteristically initiated to sanction the federal plaintiff . . . for some wrongful act;" or (3) "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial function." Pl.'s D.C. Opp'n at 6 (quoting *Sprint*, 571 U.S. at 78–79 (citing *NOPSI*, 491 U.S. at 368) (internal quotations omitted)). Both sides agree that there is no ongoing criminal prosecution, *see* Pl.'s D.C. Opp'n at 6; Defs. D.C. & Benjamin Gilmore's Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss ("D.C. Reply") at 3, ECF No. 18, so the question is whether the District's suit against Jefferson is either a "civil enforcement proceeding . . . akin to a criminal prosecution" or a "pending civil

proceeding[] involving certain orders uniquely in furtherance of the [Superior Court's] ability to perform [its] judicial function." *Sprint*, 571 U.S. at 79.

The *Sprint* Court listed several examples of the former category: "state-initiated disciplinary proceedings against [a] lawyer for violation of state ethics rules," *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982); "state-initiated administrative proceedings to enforce state civil rights laws," *Ohio Civil Rights Comm'n*, 477 U.S. 619; a "state-initiated proceeding to gain custody of children allegedly abused by their parents," *Moore v. Sims*, 442 U.S. 415 (1979); a "civil proceeding brought by the State in its sovereign capacity to recover welfare payments defendants had allegedly obtained by fraud," *Trainor v. Hernandez*, 431 U.S. 434 (1977) (internal quotation omitted); and a "state-initiated proceeding to enforce obscenity laws," *Huffman*, 420 U.S. at 598. 571 U.S. at 79. These cases usually involve investigations "culminating in the filing of a formal complaint or charges." *Id.* at 79–80. Some of those scenarios are analogous to the situation here—if federal courts should not disturb a state's civil enforcement action to remove children from their parents' custody temporarily for the sake of the children's welfare, it would seem reasonable for courts to give states some leeway to remove a property owner's control over its tenants' homes temporarily for the tenants' welfare. *See also Worldwide Moving & Storage, Inc. v. District of Columbia*, 445 F.3d 422, 423, 426 (D.C. Cir. 2006) (abstaining from District's civil enforcement action to stop moving company from "misleading customers in violation of the D.C. Consumer Protection Procedures Act").

Jefferson tries to distinguish those cases in four ways. First, it points to the type of relief it seeks in this suit. *See* D.C. Opp'n at 7. Rather than asking for an injunction to prevent Gilmore from exercising control over the property, Jefferson merely seeks a judicial declaration

9

that a taking (or a due process deprivation) has occurred and that Jefferson is entitled to just compensation. *Id.* But Jefferson cites no cases for the proposition that a federal court's declaration that a taking has occurred would not interfere with the District's enforcement proceeding. *But see Herrera v. City of Palmdale*, 918 F.3d 1037 (9th Cir. 2019) (O'Scannlain, J.) (upholding stay of § 1983 suit for damages alleging, among other claims, a taking of a motel in a state-initiated nuisance suit because even a declaratory judgment or a damages remedy would have preclusive effect on parallel state enforcement proceeding). And it is inconceivable that the Superior Court would permit the receivership to remain in place in the face of a federal judicial declaration that the entire process violates the Constitution, Jefferson's assurances to the contrary notwithstanding. *See* D.C. Opp'n at 8–9; *Samuels v. Mackell*, 401 U.S. 66, 72 (1971) ("[O]rdinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid."). That is especially true when the federal plaintiff alleges that the Superior Court's actions themselves form part of the unconstitutional actions. *See* Compl. ¶ 168 ("The District's deprivation of [Jefferson's] property resulted from a municipal policy, *expressed in rulings of the DC Superior Court* in the District's Receivership Case." (emphasis added)).

Jefferson also fails to explain how the Court would determine the appropriate level of compensation given that work remains ongoing and costs are subject to change. That fact further supports the proposition that Jefferson should raise its Fifth Amendment claims either in the Superior Court (which is monitoring the progress and cost of renovations) or after the receivership case ends (when there is no chance of federal interference with important District interests).

Second, Jefferson tries to distinguish receivership proceedings from other enforcement actions. *See* D.C. Opp'n at 10–12. Receivership, it argues, is remedial rather than punitive in nature. *See id.* at 10–11. It's fast tracked, and the only decision a court makes is whether a mere preponderance of the evidence suggests that the landlord can no longer care for the property. *See id.* at 11. Relying on *Family Division Trial Lawyers*, Jefferson compares the Superior Court proceedings to child neglect enforcement actions, which are also limited in scope and remedial in nature. *See id.* (citing *Family Div. Trial Lawyers of Super. Ct.-D.C., Inc. v. Moultrie*, 725 F.2d 695 (D.C. Cir. 1984)).

In *Family Division*, a group of attorneys brought a constitutional challenge to the Superior Court's practice of forcing lawyers to represent certain clients without compensation. 725 F.2d at 697. The attorneys regularly requested appointments to represent juveniles in delinquency proceedings; that work was typically paid. *Id.* at 698–99. But, as a condition of eligibility for juvenile delinquency work, the attorneys had to volunteer for uncompensated appointments to represent indigent parents in child-neglect proceedings in the Superior Court's Family Division. *Id.* The lawyers moved for injunctive relief in the Superior Court, but their motion was denied. *Id.* at 699. They appealed to the D.C. Court of Appeals but later withdrew the appeals because they did not have enough money to cover their costs. *Id.* at 700. While their appeals were pending, the group filed a federal takings suit, seeking compensation for their previous work and injunctive relief to stop the practice going forward. *Id.*

The D.C. Circuit ultimately held that abstention under *Younger* was inappropriate in part because the D.C. Superior Court proceedings were not enforcement proceedings *against* the federal plaintiffs. *Id.* at 700–04. The legal proceedings at issue targeted neglectful parents—the lawyers merely assisted the Superior Court in the conduct of those proceedings. *Id.* at 700–04.

11

*Family Division* was a constitutional challenge to a general administrative practice of the Superior Court; there was no pending enforcement proceeding for the federal court to disrupt. *Id.* at 702–03; *see also id.* at 711 n.2 (Starr, J., dissenting) ("Unlike *Younger v. Harris*, . . . and its civil progeny, in this case there was no pending proceeding in the District of Columbia courts. Moreover, as the majority correctly observes, any remedial order would not, as in *O'Shea v. Littleton*, 414 U.S. 488 (1974), impinge upon the day-to-day operations of the superior court."). Here, of course, the District's receivership case directly targets Jefferson in an effort to enforce the D.C. Housing Code. And the content of that proceeding is identical to the claims Jefferson brings here. Jefferson's citation to *Family Division* is unavailing.

For its part, the District notes that the Attorney General filed his complaint in the Superior Court's Civil Division (not in some specialized, limited forum) and, in addition to its petition to place the property in receivership, alleged a violation of the D.C. Consumer Protection Procedures Act, bringing the possibility of punitive sanctions to bear against Jefferson. D.C. Reply at 5–6; *see also id.* Ex. 1, ECF No. 18-1; *Carroll v. City of Mt. Clemens*, 139 F.3d 1072, 1074–75 (6th Cir. 1998) (holding that *Younger* abstention was appropriate in municipal enforcement action to enforce housing code violations against landlord when landlord mounted constitutional challenge to the violated ordinance). Jefferson has not provided (either in its papers or at a hearing on the Motions) specific facets of the Superior Court case that distinguish it from a typical judicial proceeding.

Third (and relatedly), Jefferson argues that it has had no opportunity to raise its constitutional claims in Superior Court because of the expedited and limited nature of the proceedings. *See* D.C. Opp'n at 12–15. It correctly notes that, in order for *Younger* abstention to be appropriate, the plaintiff must "have a full and fair opportunity to litigate its constitutional

12

claims in [the Superior Court] proceedings." *JMM Corp.*, 378 F.3d at 1127 (citing *Ohio Civil Rights Comm'n*, 477 U.S. at 627). "[T]he burden on this point rests on [Jefferson] to show 'that [District] procedural law barred presentation of [its] claims.'" *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (quoting *Moore*, 442 U.S. at 432). Jefferson's brief details the special procedures in place to handle receivership petitions, though it ignores the Superior Court's additional duty to adjudicate the Attorney General's claim under the Consumer Protection Procedures Act. *See* D.C. Opp'n at 13.

But Jefferson acknowledges that it has made no effort to raise the due process and takings arguments in Superior Court and that the primary obstacle to litigating constitutional challenges to the receivership is that "the judge wouldn't be interested in hearing it." While that may be true (and may be grounds for an appeal), it's a far cry from a structural defect in the forum itself that would preclude *Younger* abstention.[2] In *Hoai v. Sun Refining and Marketing, Inc.*, 866 F.2d 1515, 1519–20 (D.C. Cir. 1989), the D.C. Circuit recognized that where a Superior Court judge attempts to limit the scope of the proceedings before him to issues of District law and separate out the federal concerns, abstention is likely not appropriate. But in that instance, the federal lawsuit *preceded* the Superior Court action, so the Superior Court judge was trying to limit the extent to which he would have been duplicating issues already under litigation in federal court.

---

[2] Jefferson has also suggested that it may have lost its chance to bring a potentially compulsory counterclaim against the District in Superior Court, or alternatively that the statute of limitations may preclude it from bringing such a claim now. Aside from the fact that the receivership is ongoing and would theoretically constitute a continuing Fifth Amendment violation that would cure any statute-of-limitations concerns, a plaintiff's failure to bring timely claims in Superior Court does not somehow enable it to bring (or to attempt to bring) the same claims in another court. *Cf. Pumpelly v. Cook*, 106 F.R.D. 238 (D.D.C. 1985) (dismissing Complaint that should have been brought as a compulsory counterclaim in earlier litigation between the same Parties).

13

*Id.* That situation does not apply here, where Jefferson had an opportunity to try to raise these issues in Superior Court but opted to file a new federal lawsuit instead.

Jefferson's citations to other cases in which federal courts found that abstention was inappropriate because of insufficient opportunity to raise constitutional claims are also unavailing, as those cases either involved specialized forums that limited the scope of litigation, *see, e.g.*, *LaShawn A. by Moore v. Kelly*, 990 F.2d 1319, 1323 (D.C. Cir. 1993) ("Proceedings in the Family Division are . . . questionable vehicle[s] for adjudicating the claims raised in the present case"), or situations in which the Superior Court's Civil Division was reviewing the decisions of administrative bodies and was therefore limited in its standard of review and ability to consider claims not raised in administrative adjudications, *see, e.g.*, *Bridges v. Kelly*, 84 F.3d 470, 477 (D.C. Cir. 1996) ("Nor have we found anything suggesting that, on appeal from the [Office of Employee Appeals], the D.C. Superior Court or Court of Appeals could entertain requests for relief that were not cognizable before the [Office of Employee Appeals]."). None of that appears to be the case here, and "when a litigant has not attempted to present [its] federal claims in related [District]-court proceedings, a federal court should assume that [District] procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil*, 481 U.S. at 15.

Finally, Jefferson argues that even if the Attorney General did not bring the enforcement action in bad faith, the Tenants' Association and LEDC allegedly acted in bad faith to cause the District to bring the action by filing serial complaints as part of a conspiracy to take the property for themselves. *See* D.C. Opp'n at 15–16. Jefferson correctly notes that abstention is inappropriate when there is a "showing of bad faith, harassment, or some other extraordinary circumstances." *Middlesex Cty.*, 457 U.S. at 435. But Jefferson cites no legal authority for the

14

proposition that federal courts may impute the motivations of third parties to the District of Columbia's official actions, initiated by the District in its governmental capacity. *See Sprint*, 571 U.S. at 80. Absent an allegation that the District itself acted in bad faith, there is no "extraordinary circumstance[]" warranting federal intervention in the Superior Court case. *Middlesex Cty.*, 457 U.S. at 435.

## IV.     Conclusion

The District has demonstrated that the Superior Court's receivership case is an "ongoing [District] proceeding[] that is judicial in nature," that it "implicate[s] important [District] interests," and that it "afford[s] an adequate opportunity in which to raise the federal claims" that Jefferson has raised in this Court. *Hoai*, 866 F.2d at 1518. The Court therefore finds that it is appropriate to abstain from exercising its jurisdiction under *Younger*. 401 U.S. at 41. Jefferson may attempt to raise its constitutional claims in the Superior Court or, once that case has concluded, resurrect those claims in federal court. The Court declines to exercise supplemental jurisdiction over Jefferson's tort claim against the Tenants' Association and LEDC.

For the foregoing reasons, the District of Columbia's Motion to Dismiss is **GRANTED**. The Tenants' Association and LEDC's Motion to Dismiss is also **GRANTED**. All counts in the Complaint are **DISMISSED** without prejudice. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: April 9, 2020

CARL J. NICHOLS
United States District Judge