**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JEFFERSON-11TH STREET, LLC,

*Plaintiff*,

v.

DISTRICT OF COLUMBIA, et al.,

*Defendants*.

Civil Action No. 1:19-cv-01416 (CJN)

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff Jefferson-11th Street, LLC's Motion to Alter or Amend a Final Order under Federal Rule of Civil Procedure 59(e), ECF No. 27. Jefferson, which operates an apartment building, brought takings and due-process claims against the District of Columbia and its appointed receiver, Benjamin Gilmore, after the District filed a housing-code enforcement action in the Superior Court of the District of Columbia, obtained an order placing the property in receivership, and began to renovate the property according to its own plan at Jefferson's expense. *See generally* Compl., ECF No. 1; *see id.* ¶¶ 153–74. The Court abstained from deciding those claims under *Younger v. Harris*, 401 U.S. 37 (1971), relinquished supplemental jurisdiction over the remaining count against certain tenants' groups for common-law tortious interference with business expectancy, and dismissed the case without prejudice. *See Jefferson-11th St., LLC v. District of Columbia*, No. 1:19-cv-1416, 2020 WL 1814410, at *8 (D.D.C. Apr. 9, 2020); *see also* Order, ECF No. 25.

Jefferson now moves to amend the Order so that its claims are stayed rather than dismissed. *See generally* Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. to Alter or Amend Final Order ("Mot."), ECF No. 27-1. The Court agrees that it is more appropriate to stay Jefferson's

damages claims against the District than to dismiss them. But because the Court retains supplemental jurisdiction over the tortious-interference count, it must address the Tenant Defendants' Motion to Dismiss for failure to state a claim, ECF No. 11, which it grants.

## I.     Procedural History

The Court's prior opinion lays out the facts underlying this litigation. *See Jefferson*, 2020 WL 1814410 at *1–3. Jefferson's Complaint contains three counts. Count I alleges that the District's Receivership Case in Superior Court, the Court's appointment of Receiver Gilmore, and the property's subsequent renovation at Jefferson's expense constitute a taking of private property without just compensation under the Fifth Amendment. Compl. ¶¶ 153–63. Count II alleges, in the alternative, that the same actions deprived Jefferson of property without due process of law in violation of the Fifth Amendment. *Id.* ¶¶ 164–74. Jefferson seeks for its takings claim both a judicial declaration that a taking has occurred and an award of just compensation; and for its due-process claim Jefferson seeks an award of compensatory damages only. *Id.* at 31–32. Count III, in turn, alleges that the Tenants' Association and the Latino Economic Development Council of Washington, D.C. (LEDC) tortiously interfered with Jefferson's business expectations by "deliberately and intentionally interfer[ing] with" Jefferson's "attempts to improve and rehabilitate the [p]roperty," depriving Jefferson of its expectation of "enhancing the [p]roperty's market value, increasing rents as allowed by law, and realizing a commercially reasonable rate of return on the [p]roperty." *Id.* ¶¶ 176, 178.

Both sets of Defendants moved to dismiss. The District argued primarily that the Court should abstain under *Younger* so as not to interfere with the on-going enforcement action in Superior Court. *See* Defs. The Dist. of Columbia and Benjamin Gilmore's Mot. to Dismiss ("D.C. Mot.") at 6–8, ECF No. 10. It also argued that Gilmore is immune from suit as the Superior Court's agent, *id.* at 8–9, and that the Complaint fails to state a claim, *id.* at 9–16. The

Tenants argued that the *Noerr-Pennington* Doctrine bars suit against them, *see* Defs. 2724 11th St. NW Tenants' Ass'n, Inc. and LEDC's Mot. to Dismiss Pursuant to Rule 12(b)(6) and Mem. of P. & A. in Supp. ("Tenants' Mot.") at 7–11, ECF No. 11, and that Count III fails to state a claim, *id.* at 11–16.

The Court granted the District's Motion on abstention grounds and dismissed Counts I and II, giving Jefferson the option either "to raise its constitutional claims in the Superior Court or, once that case has concluded, resurrect those claims in federal court." *Jefferson*, 2020 WL 1814410 at *8. The Court then declined to reach the merits of Jefferson's common-law claim against the Tenants, relinquished supplemental jurisdiction, and dismissed it. *Id.* The Court's opinion stated that "*[a]ll counts in the Complaint* are **DISMISSED** without prejudice." *Id.* (emphasis added). The Court's accompanying Order used slightly different phrasing, stating instead "that the *case* is **DISMISSED** without prejudice." Order at 1 (emphasis added).

Jefferson timely moved to amend the Order under Rule 59(e). *See generally* Mot. It argues that dismissal of the entire case creates a risk that the statute of limitations will run before completion of the parallel litigation, thus practically barring Jefferson from pursuing its constitutional claims in a federal forum even if the Court had no intention of raising such an obstacle. *See generally id.*

**II. Motion to Amend Final Order**

Rule 59(e) "provides a limited exception to the rule that judgments are to remain final." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018). "Under Rule 59(e), the court may grant a motion to amend or alter a judgment under three circumstances only: (1) if there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'" *Id.* (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per

curiam)). "Although the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration or amendment of a judgment is nonetheless an extraordinary measure." *Id.*

Jefferson only argues the third prong—manifest injustice. *See* Mot. at 3–4. "[M]anifest injustice requires at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law." *Leidos*, 881 F.3d at 217 (internal quotation omitted). Jefferson argues that dismissal without prejudice has subjected it to manifest injustice because it prevents any tolling of the statute of limitations, *see* Mot. at 5–10, and that dismissing its claims—rather than staying them—was contrary to law and therefore fundamentally unfair, *see id.* at 10–14.

**A. The Statute of Limitations**

The Court did not meaningfully address the question of the statute of limitations in its prior Opinion because no Party raised the issue.[1] The District filed its suit in Superior Court on April 24, 2017. *See* Compl. ¶ 110 (citing *District of Columbia v. Jefferson-11th St., LLC*, No. 2017 CA 2837 2 (D.C. Super. Ct. Apr. 24, 2017)). The Court appointed Gilmore as receiver on November 17, 2017, *id.* ¶ 129, and adopted Gilmore's plan to rehabilitate the property on March 30, 2018, *id.* ¶ 138. In turn, Jefferson filed this lawsuit on May 15, 2019. *See generally id.*

Jefferson's constitutional claims against the District arise under 42 U.S.C. § 1983. "[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by

[1] No Party mentioned the statute of limitations in its briefs, so the Court raised the question *sua sponte* during the hearing on Defendants' motions to dismiss. Jefferson briefly asserted that its window for raising counterclaims in Superior Court had already closed but did not discuss how dismissal would affect the statute of limitations. In its Opinion, the Court noted (without deciding) that the alleged taking and due-process deprivation might be on-going, therefore giving Jefferson ample time to re-file its claims once the Superior Court litigation concludes, but the Court did not engage in a detailed analysis of when the statute would run. *See Jefferson*, 2020 WL 1814410, at *7 n.2.

reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis removed). Jefferson asserts, and Defendants do not contest (for the limited purposes of Jefferson's Motion), that the claims against the District accrued on March 30, 2018—the day the receiver obtained the Superior Court's approval to rehabilitate the property. *See* Mot. at 6 (citing *Knick v. Township of Scott*, 139 S. Ct. 2162, 2177 (2019) (holding that plaintiffs may bring takings claims in federal court "when [a government] takes property without compensation . . . because the violation is complete at the time of the taking")); *see also* Defs. The Dist. of Columbia & Benjamin Gilmore's Opp'n to Pl.'s Mot. to Alter or Amend Final Order ("D.C. Opp'n") at 3 n.1, ECF No. 28 ("[Defendants] do not concede . . . that the claims . . . actually accrued on March 30, 2018."). The Court assumes, without deciding, that Jefferson's assertion is correct. But the limitations period *is* defined by state law, and "the appropriate statute of limitations for a claim brought under section 1983 'is that which the State provides for personal-injury torts.'" *Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012) (quoting *Wallace*, 549 U.S. at 387). In the District of Columbia, the Court "appl[ies] the three-year residual statute of limitations to a section 1983 claim." *Id.* (citing D.C. Code § 12-301(8)). The statute therefore might run on Jefferson's claims against the District as early as March 30, 2021. *See* Mot. at 7.

Jefferson likely tolled the statute of limitations by timely filing suit here. *See Ciralsky v. CIA*, 355 F.3d 661, 672 (D.C. Cir. 2004) (citing Fed. R. Civ. P. 15(c)). In general, however, "once a suit is dismissed, even if without prejudice, the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." *Id.* (internal quotation omitted). It is therefore theoretically possible that, by the time the property's rehabilitation, the Superior Court litigation, and any associated appeals conclude, Jefferson will have missed its chance to

file another federal suit. The same theory may also apply to the claim against the Tenants. Unlike the alleged taking, which may be ongoing, the Tenants' alleged scheme began before the receiver started his work on the property and may no longer be continuing, so the claim may have accrued some time ago and the statute of limitations might run even earlier than it will for the takings and due-process claims. *See* Mot. at 9–10.

Jefferson therefore asks the Court to dismiss the Complaint (rather than the case) and to stay the case, thereby preserving the tolling effect of its pending claims to ensure that Jefferson will have an opportunity to press its constitutional claims in the event that it does not get the chance to raise them in Superior Court. *Id.* at 10. The Court need not grant the motion on that basis alone, as Jefferson did not adequately "advise the [C]ourt in a timely fashion—i.e., before the [C]ourt ruled on the motion to dismiss—that there was a limitations problem." *Ciralsky*, 355 F.3d at 673. During the hearing on Defendants' motions to dismiss, the Court expressly asked both sets of Defendants whether, if the Court decided that *Younger* applied, the Court should dismiss or stay the case. All Defendants advocated for dismissal, but Jefferson did not respond to those arguments.

Jefferson's failure to argue for a stay might warrant denial of its Motion. In *Ciralsky*, the D.C. Circuit approved of the district court's denial of a Rule 59(e) Motion even though the dismissal without prejudice had the effect of barring the plaintiff from re-filing his claim, as the statute of limitations had run. 355 F.3d at 671–73. The Court of Appeals based that decision, in part, on the plaintiff's failure to advise the district court of the effects the dismissal would have, even though the district court likely did not intend to bar the suit permanently.[2] *Id.* at 673. It's

[2] Although the Court of Appeals approved the district court's reasoning, it remanded the case for reconsideration because it was unsure whether the district court had intended the final result. *Ciralsky*, 355 F.3d at 674. The district court later granted the motion for reconsideration and

plausible, as Jefferson avers now, that Jefferson assumed the Court would stay this matter under *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 718–19 (1996), and saw no need to clarify the precise procedural mechanisms it desired. *See* Pl.'s Reply Mem. in Further Supp. of Mot. to Alter or Amend Final Order ("Reply") at 10, ECF No. 30.

**B. Staying Actions for Damages**

But Jefferson makes a second, related argument that the Court's dismissal of the entire action may have constituted a mistake of law. In *Quackenbush*, the Supreme Court stated that it has "applied abstention principles to actions 'at law' only to permit a federal court to enter a stay order that *postpones* adjudication of the dispute, not to dismiss the federal suit altogether." 517 U.S. at 719. This case involves prayers for both declaratory relief and compensatory damages, *see* Compl. at 31–32, so it is unclear to what extent *Quackenbush's* rule applies. Courts in this district have occasionally dismissed cases under *Younger* when they sought "primarily equitable relief." *See, e.g., Ford v. Tait*, 163 F. Supp. 2d 57, 67 (D.D.C. 2001) (dismissing claims by attorney challenging bar discipline on due-process and equal-protection grounds and seeking declaratory and injunctive relief and damages). But most cases involving mixed legal and equitable claims (including several on which the Court relied in its prior opinion) have tended to dismiss the counts seeking equitable relief and to stay claims for damages. *See, e.g.*, *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1120 (D.C. Cir. 2004) ("The parties do not dispute that the stay was appropriate if the *Younger* doctrine was properly applied." (citing *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988))); *Herrera v. City of Palmdale*, 918 F.3d 1037, 1042 (9th Cir. 2019) (O'Scannlain, J.) ("The district court therefore dismissed the claims for declaratory

permitted the plaintiff to file a second amended complaint. *See Ciralsky v. CIA*, 689 F. Supp. 2d 141, 146–47 (D.D.C. 2010).

and injunctive relief in the federal action, and stayed the claims for damages pending resolution of proceedings in the state action."); *Carroll v. City of Mt. Clemens*, 139 F.3d 1072, 1075–76 (6th Cir. 1998); *see also id.* at 1079–80 (Moore, J., concurring in part).

The District makes several fainthearted attempts to distinguish those cases. First, it points out that *Quackenbush* involved *Burford* abstention rather than *Younger* abstention, though it does not explain why that distinction matters, especially in light of *Quackenbush's* references to the Court's general "abstention principles." *See* D.C. Opp'n at 4 (citing *Quackenbush*, 517 U.S. 706); *cf. Carroll*, 139 F.3d at 1079 (Moore, J., concurring in part) ("While *Quackenbush* involved *Burford* abstention, its reasoning applies with equal force to *Younger* abstention.").

Second, the District attempts to distinguish *Quackenbush* on the facts. That case involved pure legal claims for damages—tort and contract actions—that were removed but which the federal court abstained from deciding pending the resolution of important legal questions then being litigated in state court. D.C. Opp'n at 4–5 (citing *Quackenbush*, 517 U.S. at 709). The District notes that here, in contrast, Jefferson seeks, first and foremost, declaratory relief of the sort that is properly dismissed under *Younger. Id.* (citing *Ford*, 163 F. Supp. 2d at 67). It argues that Jefferson's Complaint is therefore primarily equitable in nature and should be dismissed altogether. *Id.* But Jefferson's claims are readily separable. Count I seeks two distinct forms of relief: a declaratory judgment and compensatory damages. Compl. at 31–32. Count II seeks only damages. *Id.* at 32. While it may be the case that dismissal is appropriate insofar as Count I seeks a declaration that the Superior Court proceedings are unconstitutional, *see Jefferson*, 2020 WL 1814410 at *5 (citing *Herrera*, 918 F.3d 1037), the Court can stay the rest of Count I and all of Count II, retain jurisdiction, and avoid any potential prejudice or windfall that may result due to the statute of limitations.

Finally, the District attempts to distinguish cases like *Carroll* because they were decided by other circuit courts of appeals and are therefore not binding on this Court. *See* D.C. Opp'n at 5. That argument is surprising, because the District cited the *exact* same decision when litigating its Motion to Dismiss, and the Court relied on that decision in its prior opinion. *See* D.C. Mot. at 8 (citing *Carroll*, 139 F.3d at 1075); *see also Jefferson*, 2020 WL 1814410 at *6 (same). Then, in the same breath, the District points the Court to another out-of-circuit case—this one unpublished—for the proposition that district courts "should stay and not dismiss accompanying claims for damages . . . *when such relief is not available from the ongoing state proceedings*," presumably suggesting that such relief is available to Jefferson in Superior Court. D.C. Opp'n at 5–6 (quoting *Howard v. N.J. Div. of Youth & Family Servs.*, 398 F. App'x 807, 811 (3d Cir. 2010) (quoting *Williams v. Hepting*, 844 F.2d 138, 144–45 (3d Cir. 1988)) (emphasis added)). The District neglects to mention, of course, that the Third Circuit *upheld* the dismissal of damages claims against some defendants in that case because those defendants were immune from suit, but the Court *reversed* as to other defendants and remanded with directions to enter a stay. *Howard*, 398 F. App'x at 812.

In sum, the Court did not dismiss Jefferson's claims with prejudice and did not intend for its Order potentially to have that effect. Although it would have been preferable to have considered the present issues before its April 9, 2020 order was entered, the Court concludes that there is a risk of "manifest injustice" for Jefferson through the possibility that the statute of limitations will run before Jefferson has an opportunity to conclude the Superior Court litigation and resurrect its constitutional claims here. *Leidos*, 881 F.3d at 217. The Court will therefore grant Jefferson's Motion, vacate its previous order, and issue a new order dismissing Count I to the extent that it seeks declaratory relief and staying further proceedings as to the remainder of

Count I and Count II until the Superior Court litigation concludes. The stay "may be an empty formality" in the event that Jefferson raises and the Superior Court reaches those claims on the merits, *Carroll*, 139 F.3d at 1075, but doing so will prevent any potential "fundamental unfairness" to Jefferson and will not prejudice the District in any way, *Leidos*, 881 F.3d at 217.

## III. Tenants' Motion to Dismiss

Because the Court will stay rather than dismiss a part of Count I and Count II, the Court retains supplemental jurisdiction over the remaining common-law claim contained in Count III. *See* 28 U.S.C. § 1367. The Tenant Defendants do not contend that *Younger* applies to that Count; rather, they move to dismiss it under Rule 12(b)(6) because it's barred by the *Noerr-Pennington* Doctrine and because it fails to state a claim. *See generally* Tenants' Mot. The Court must therefore reach those arguments.[3]

### A. Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When evaluating a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], the Court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Atlas Brew Works, LLC v. Barr*, 391 F. Supp. 3d 6, 11 (D.D.C. 2019) (internal quotations and citations omitted). Although the Court accepts all well pleaded facts in the Complaint as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation

[3] Both Jefferson and the Tenants agree that the Court should decide the Tenants' Motion to Dismiss now. *See* Reply at 11; Defs. 2724 11th St. NW Tenants' Ass'n, Inc. & LEDC's Opp'n to Pl's Mot. to Alter or Amend Final Order at 2, ECF No. 29.

to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 554–55 (internal quotations and citations omitted). The claim to relief must be "plausible on its face," enough to "nudge[ the] claims across the line from conceivable to plausible." *Id.* at 570.

**B. Analysis**

Count III alleges that the Tenants' Association and LEDC tortiously interfered with Jefferson's business expectancy through a scheme to file a series of administrative complaints against the property, thereby tying Jefferson up in litigation, preventing it from improving the property (and raising rents accordingly), and depressing the market value. Compl. ¶¶ 175–79; *see also id.* ¶¶ 26–109 (detailing administrative processes and litigation); *Jefferson*, 2020 WL 1814410 at *2. Jefferson contends that, at the outset, individual tenants refused to consent to Jefferson's initial plan to rehabilitate, Compl. ¶ 29, and opposed Jefferson's hardship petition before the D.C. Rent Administrator, *id.* ¶¶ 36–41. Then, with LEDC's assistance, they incorporated the Tenants' Association, *id.* ¶ 42; filed their own administrative petition, *id.* ¶¶ 43–49; reported Jefferson for dozens of housing-code violations, *id.*; opposed Jefferson's attempts to obtain a zoning variance, *id.* ¶¶ 54–55, 62–64; opposed Jefferson's second hardship petition, *id.* ¶¶ 57–58, 73–82; filed a second tenant petition, *id.* ¶¶ 68–72; petitioned the Rent Administrator to conduct housing-code and mold inspections, *id.* ¶¶ 93–102; opposed Jefferson's substantial-rehabilitation petition and moved for sanctions against Jefferson, *id.* ¶ 105; filed a lawsuit to force Jefferson to remediate the mold problems, *id.* ¶¶ 106–09; and "induced the [Attorney General] to commence and prosecute the District's Receivership Case in furtherance of the Scheme," *id.* ¶ 111.

Jefferson alleges that, because D.C. law gives tenants the right of first refusal to purchase a property before a landlord sells it, the Tenants had an incentive to depress the property's value,

purchase it for themselves, and then permit a developer to renovate and sell it for a profit. Compl. ¶¶ 4, 38, 161 (citing Tenant Opportunity to Purchase Act, D.C. Code §§ 42-3404.01–.14). Jefferson thus characterizes the Tenants' objections before the administrative bodies charged with permitting the projects and rent increases, the very act of incorporating the Tenants' Association, the filing of the mold lawsuit, and the Tenants' own petitions to redress housing-code violations as serial abuse of the legal system for the purpose of harassing Jefferson and depriving it of the benefit of its property. *Id.* ¶¶ 175–79.

The Tenants and LEDC move to dismiss on two separate grounds. *See generally* Tenants' Mot. First, they argue that the *Noerr-Pennington* Doctrine immunizes them for their legitimate exercise of First Amendment rights in petitioning the government for redress to stop a slumlord from abusing its tenants. *See id.* at 7–11; *see also E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965). Second, they argue that Count III fails to state a claim for tortious interference under D.C. law. *See* Mot. at 11–15

**1. *Noerr-Pennington***

*Noerr-Pennington* is primarily an antitrust doctrine "under which petitioning the Government for redress of grievances, whether by efforts to influence legislative or executive action or by seeking redress in court, is immune from liability under the antitrust laws." *Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 677 (D.C. Cir. 2005). Courts sometimes extend it outside the antitrust context, but the D.C. Circuit has never decided whether it bars common-law torts alleging the same types of communications with the government.

For instance, in *Whelan v. Abell*, the district court had overturned a jury verdict and granted judgment as a matter of law to defendants who raised a *Noerr-Pennington* defense to a tortious-interference claim. 48 F.3d 1247, 1253–55 (D.C. Cir. 1995). The Court of Appeals

reversed without deciding whether the doctrine applied because it found that the doctrine did not fit the facts of the case. *Id.* *Noerr-Pennington* contains a "sham" exception that does not protect defendants if they petitioned for redress in bad faith or with knowledge that their claims had no chance of success on the merits. *Id.* at 1253 (citing *Prof'l Real Estate Inv'rs v. Columbia Pictures Indus., Inc. (PREI)*, 508 U.S. 49, 60 (1993)). That was the case in *Whelan*, so *Noerr-Pennington* could not block the jury's verdict for the plaintiff. *Id.* at 1256. Likewise in *Nader v. Democratic National Committee*, the D.C. Circuit speculated that the doctrine might apply to torts but found no need to answer the question, despite the fact that the district court had explicitly done so, because the statute of limitations blocked the claim altogether. 567 F.3d 692, 696–99 (D.C. Cir. 2009).

Some district courts have read those cases as permitting application of the doctrine outside the antitrust context. For example, in *Eastern Savings Bank v. Papageorge*, the district court dismissed claims for intentional interference with contract and abuse of process because they were "predicated upon an assertion that defendants' litigation against the plaintiff which led to the [alleged harm] constitutes 'sham litigation,' [but those] claims [had to] fail, since the plaintiff ha[d] not established the defendants' suits were 'objectively baseless.'" 31 F. Supp. 3d 1, 19–20 (D.D.C. 2014) (internal citation omitted). Because those defendants had already won a suit in the D.C. Court of Appeals against the plaintiffs, and because a "winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham," *id.* at 20 (quoting *PREI*, 508 U.S. at 61), *Noerr-Pennington* applied and its "sham" exception did not. *Id.* But the D.C. Circuit later cast doubt on the doctrine's applicability to torts in a footnote in *Banneker Ventures, LLC v. Graham*:

> We also reject [defendant's] argument that its conduct is shielded by the *Noerr–Pennington* doctrine. . . . To our knowledge, we have

> never applied the *Noerr–Pennington* doctrine, which arose in the context of the antitrust laws, to bar liability for common law torts; Defendants cite no case to the contrary. *Cf. Whelan v. Abell,* 48 F.3d 1247, 1254 (D.C. Cir. 1995). Even were we to do so now, and we take no position on the matter, the doctrine does not apply to [the facts of this case].

798 F.3d 1119, 1137 n.8 (D.C. Cir. 2015).

As a result, it is unclear whether *Noerr-Pennington* has any relevance here. And even if it does apply, it's unclear that the doctrine would bar Jefferson's claims against the Tenants, at least as they are alleged in the Complaint. Jefferson argues that the Tenants' use of the D.C. administrative processes and courts was a sham aimed at depressing the property's market value and forcing Jefferson to sell to the Tenants rather than a good-faith effort to remediate housing-code violations. *See* Pl.'s Mem. of P. & A. in Opp'n to the Mot. of Defs. 2724 11th St. NW Tenants' Ass'n, Inc. & LEDC to Dismiss the Compl. ("Pl.'s Opp'n") at 9–10, ECF No. 12. The Tenants argue that under *PREI*, their use of the legal process cannot have been a sham because they succeeded in their administrative petitions and lawsuit. *See* Mot. at 9 (citing *Papageorge*, 31 F. Supp. 3d at 19 (citing *PREI*, 508 U.S. at 60)). But Jefferson points the Court to the formula the Supreme Court articulated in *California Motor Transport Company v. Trucking Unlimited*, which looks less at whether the Tenants were successful before administrative bodies and more at their motivations in lodging frequent objections and petitions. *See* Pl.'s Opp'n at 10 (citing 404 U.S. 508, 511 (1972)).

The Court need not wade into this debate. Because the Tenants correctly argue in the alternative that Jefferson has not stated a claim for tortious interference, there is no need to determine whether their alleged activities were a sham or whether *Noerr-Pennington* applies to common-law torts at all.

**2. Failure to State a Claim**

To state a claim for tortious interference with business expectancy, the Complaint must plausibly allege "(1) the existence of a valid business . . . expectancy, (2) knowledge of the . . . expectancy on the part of [Defendants], (3) intentional interference inducing or causing a breach or termination of the . . . expectancy, and (4) resultant damage." *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995) (citing *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284 (D.C. 1977)) (other citation omitted).

Among other arguments, the Tenants contend that Jefferson's expectancies do not enjoy legal protection. Tenants' Mot. at 11–15. They rely in part on *Carr v. Brown*, 395 A.2d 79 (D.C. 1978). *See* Tenants' Mot. at 13. There, a property developer wanted to close an alley behind his building to permit more development. *Carr*, 395 A.2d at 82–83. Brown, the head of the neighborhood association, opposed the closure before the City Council's Transportation Committee, the Board of Zoning Adjustment, and the Advisory Neighborhood Council. *Id.* at 83. He also induced others to make their opposition known. *Id.* Because the Council deferred ruling on the project, Carr never developed his property as planned. *Id.* He subsequently sued Brown for tortious interference with his business expectancy. *Id.*

The Court first recognized that "business expectancies, not grounded on present contractual relationships but which are commercially reasonable to anticipate, are considered to be property and therefore protected from justified interference." *Id.* at 84. But it distinguished between "interference with prospective contractual or business relations," which revolve around specific relationships with other contractual partners that can be disrupted, and "expectations of profit that [are] wholly contingent upon the decisions of . . . governmental bodies." *Id.* In the former context, the plaintiff's "background of business experience" might serve as a "basis [on] which it is possible to estimate with some fair amount of success both the value of what has been

lost and the likelihood that the plaintiff would have received it if the defendant has not interfered." *Id.* (quoting W. Page Keaton et al., *Prosser and Keaton on the Law of Torts* § 130 (4th ed. 1971)). But in cases of prospective development requiring government approval,

> An applicant . . . cannot expect upon the basis of any experience that his application will be automatically approved within a specified period of time. Appellant cannot contend that because he encounters opposition to his application, some of which may be malicious, that the opponent is thereby interfering with his "expectancies" so as to constitute a tort. Rather the person who is "interfering" with the applicant's petition for an alley closing and a zoning exception is participating in procedures fixed by statute which specifically invite opposition. Accordingly, we conclude that appellant's "expectancies" of approval by the [administrative bodies] *are not of the character that may be protected by this cause of action for the tort of interference with property.*

*Id.* (emphasis added).

What was true in *Carr* is true here—Jefferson has not alleged that the Tenants interfered with a valid business expectancy that is protected from such interference. Jefferson attempts to distinguish *Carr* by pointing to the protracted nature of the Tenants' efforts to oppose Jefferson's plans. *See* Pl.'s Opp'n at 16. Jefferson argues that rather than merely appearing before a government body to offer another point of view, as in *Carr*, the Tenants engaged in an extended scheme to thwart development over the course of several years. *Id.* But Jefferson offers no authority for the proposition that an interest that is contingent on governmental approval somehow becomes eligible for legal protection if the developer returns before the administrative bodies more than once and faces the same, repeated opposition. To be sure, *Carr* recognized the possibility that a developer might face bad-faith opposition, but rather than applying laws protecting business expectancies in that scenario, the Court pointed to other causes of action a plaintiff might use:

> Our affirmance does not, of course, leave applicants for governmental licensing unprotected from false or malicious

> statements from parties in opposition who appear before the various governmental bodies; false statements that are defamatory are actionable unless privileged.

395 A.2d at 85. As in *Carr*, Jefferson has not alleged that any of the Tenants' public statements were defamatory (or even false). *Id.* Because Jefferson's interest in the rehabilitation was subject to governmental approval (as demonstrated by its repeated appearances before the Rent Administrator, Board of Zoning Adjustment, Office of Administrative Hearings, and Superior Court), *see generally* Compl., it cannot claim a concrete business expectation subject to protection from outside interference by tort law. The Court need not reach any of the Tenants' other arguments as to why the Complaint fails to state a claim. *See* Tenants' Mot. at 12–16.

## IV. Conclusion

The Court did not intend to create a potential statute-of-limitations bar to Jefferson's future attempt to return to federal court to press its claims against the District and Gilmore once the Superior Court litigation ends. It is therefore appropriate to stay at least some of Jefferson's claims rather than dismiss them. But because Jefferson fails to state a claim against the Tenant Defendants, the Court will dismiss Count III. An Order will be released contemporaneously with this Memorandum Opinion.

DATE: June 5, 2020

CARL J. NICHOLS
United States District Judge